UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| STACEY VADEN, | ) | CASE NO. 1:17CV1656 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION & ORDER |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Stacey Vaden ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Title II Medicare Only Benefits and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") violated the treating physician rule and lacked substantial evidence for the RFC that she determined for her. ECF Dkt. #14. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

**I.  FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed applications for Title II Medicare only and SSI in February of 2012 and March 8, 2012, respectively. ECF Dkt. #11 ("Tr.") at 261-268.[2] She alleged disability beginning April 24, 2009 due to knee, back, hand, feet and leg problems, high blood pressure, arthritis, and headaches. *Id.* at 261, 263, 289. The Social Security Administration ("SSA") denied her applications initially and upon reconsideration. *Id.* at 186-200. Plaintiff requested a hearing before an ALJ, and the ALJ began a hearing on December 18, 2013, where Plaintiff was unrepresented. *Id*. at 30, 88-98. The

---

[1]On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

ALJ informed Plaintiff of her right to representation and subsequently postponed this hearing and continued it in order to allow Plaintiff to obtain representation and additional evidence. *Id.* at 97-98. On April 9, 2014, Plaintiff and a vocational expert ("VE") appeared at another hearing before the ALJ. *Id.* at 60-85. The ALJ noted that Plaintiff was again without representation, and the ALJ thoroughly informed Plaintiff of her right to representation at the hearing and inquired as to whether Plaintiff wished to proceed without representation. *Id.* at 61-63. Plaintiff affirmed that she wished to proceed without representation. *Id.* at 62. The hearing took place, and Plaintiff and the VE testified. *Id.* at 63-85.

On July 11, 2014, the ALJ issued a decision denying Plaintiff's applications for Title II Medicare Only Benefits and SSI. Tr. at 168-177. Plaintiff appealed that determination to the Appeals Council and the Appeals Council remanded Plaintiff's case based upon medical records that were requested by the ALJ after the hearing and not proffered to Plaintiff. Tr. at 184; ECF Dkt. #14 at 1-2.

On January 4, 2016, the ALJ held another hearing on the basis of the remand, where Plaintiff again appeared without representation. Tr. at 102. The ALJ again advised Plaintiff of her right to representation and Plaintiff affirmed that she wished to proceed without representation. *Id.* at 102-104. The ALJ went forward with the hearing, where Plaintiff and a VE testified. *Id.* at 102-116.

On April 25, 2016, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled under Social Security regulations and not entitled to Title II Medicare Only Benefits and SSI. Tr. at 11-21. Plaintiff requested review of the ALJ's decision to the Appeals Council, but the Appeals Council denied the request on July 12, 2017. *Id.* at 1-7.

On August 8, 2017, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. She filed a brief on the merits on November 28, 2017 and Defendant filed a merits brief on December 21, 2017. ECF Dkt. #s 14, 15.

## II. **RELEVANT PORTIONS OF ALJ'S DECISION**

On April 25, 2016, the ALJ issued a decision finding that Plaintiff had not engaged in substantial gainful activity since April 24, 2009, the alleged onset date, and she found that since that date, Plaintiff had the severe impairments of osteoarthritis in the right knee, degenerative disc

-2-

disease ("DDD") in the lumbar spine, obesity, and carpal tunnel syndrome ("CTS") in the right hand status post-surgical release in 2007. Tr. at 14. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 14-15. After considering the record, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations: frequent hand controls and fingering in dominant right hand, but no limits on the left; occasional climbing of stairs and ramps, never climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crawling and crouching; and avoidance of hazards such as unprotected heights and operating machinery; and she requires a cane for ambulation. *Id.*

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff had no past relevant work, but she could perform jobs existing in significant numbers in the national economy, such as document specialist, receptionist, and food and beverage order clerk. Tr. at 20. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and she was not entitled to Title II Medicare only or SSI from April 24, 2009, through the date of her decision. *Id.* at 21.

### III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## V. LAW AND ANALYSIS

### A. TREATING PHYSICIAN OPINION

Plaintiff asserts that the ALJ violated the treating physician rule by failing to provide good reasons for affording less than controlling weight and only little weight to the opinion of her treating physician, Dr. Wise. ECF Dkt. #14 at 11-17. For the following reasons, the Court finds that the ALJ provided good reasons for her treatment of Dr. Wise's opinion and substantial evidence supports that determination.

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, she must provide "good reasons"[3] for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* 20 C.F.R. § 416.920. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

-5-

invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

On July 29, 2011, Plaintiff presented to Dr. Wise, her family physician, to have her complete Plaintiff's SSI paperwork. Tr. at 406. Dr. Wise indicated that she began treating Plaintiff five years prior to the date that she completed the SSI form. Tr. at 423. The record contains a one-page form which includes only a part "C" of the form for a physical functional capacity assessment. *Id.* at 414. Dr. Wise signed the bottom of the one-page form. *Id.* The form asked if Plaintiff's standing/walking were affected by her medical conditions, and Dr. Wise checked the "Yes" box. *Id.* She indicated that Plaintiff could stand/walk up to 30 minutes in an 8-hour workday and she could do so for 10 minutes without interruption. *Id.* Dr. Wise also checked the "Yes" box when asked if Plaintiff's medical conditions affected her ability to sit. *Id.* She indicated that Plaintiff could sit 1-2 hours per 8-hour workday and could do so for 30-60 minutes without interruption. *Id.* Dr. Wise checked the "Yes" box as to whether Plaintiff's lifting/carrying were affected by her medical conditions, and she opined that Plaintiff could lift no weight frequently or occasionally. *Id.* She further opined that Plaintiff was extremely limited in bending, markedly limited in handling objects, moderately limited in pushing/pulling, and repetitive foot movements, and not significantly limited or not limited at all in reaching, seeing, hearing or speaking. *Id.* When asked to explain her

limitations and the evidence to support them, Dr. Wise wrote that Plaintiff could not bend at her wrist or squat. *Id.* She further wrote "Antalgic gait, cannot walk >50 yards with rest, grip inconsistent due to CTS - drops things." *Id.* She further opined that Plaintiff was unemployable and Plaintiff's physical limitations would be expected to last 12 months or more. *Id.*

In her decision, the ALJ addressed Dr. Wise's opinion in a short paragraph. Tr. at 19. She stated that she gave little weight to Dr. Wise's opinion because recent treatment of Plaintiff at the Cleveland Clinic did not support the limitations that Dr. Wise opined. *Id.* The ALJ also reasoned that objective testing, such as a MRI, showed only minimal DDD at L3-L4. *Id.* The ALJ further noted that Dr. Wise indicated in a 2013 treatment note that Plaintiff needed a knee replacement, but Dr. Berkowitz stated that if Plaintiff's pain continued in her knee, a second arthroscopy was necessary, not a knee replacement. *Id.*

Despite the short paragraph, the Court finds that the ALJ properly applied the treating physician rule and substantial evidence supports her decision to attribute Dr. Wise's opinion less than controlling and only little weight. The ALJ cited to the proper regulations and Social Security Rulings concerning her review of opinion evidence. Tr. at 15. Further, although she could have provided a much more thorough explanation in the paragraph specifically reviewing Dr. Wise's opinion, this paragraph, combined with the rest of the ALJ's decision, constitutes substantial evidence to support her treatment of the opinion.

In the paragraph specifically addressing Dr. Wise's opinion, the ALJ acknowledged that Dr. Wise was a treating source. Tr. at 19. She explained that she was attributing little weight to the opinion because recent treatment records from the Cleveland Clinic did not support Dr. Wise's extreme limitations. *Id.*, citing Tr. at 656-698. This constitutes a good reason for discounting Dr. Wise's opinion because earlier in her decision, the ALJ reviewed Cleveland Clinic records which showed in February 2014 that Plaintiff had negative straight leg raising upon physical examination, palpation along the bilateral paraspinous muscle, right knee crepitus and pain, and decreased range of motion in the back, but normal and symmetric bilateral extremity strength, no atrophy or tone abnormalities, and no loss of sensation. *Id.* at 17, citing Tr. at 659. The ALJ also reviewed March 17, 2014 Cleveland Clinic treatment notes which showed that Plaintiff had pain to palpation along

the back, but normal range of motion, full and pain-free range of motion in the extremities, no deformities, edema or skin discoloration, and no atrophy or tone abnormalities. *Id*. at 18, citing Tr. at 669.

The ALJ also cited to a February 21, 2014 MRI which she stated showed minimal DDD at the L3-L4 level. Tr. at 19, citing Tr. at 659-665. Plaintiff contends that the ALJ misstated these findings because the February 21, 2014 MRI also showed multi-level disc degeneration besides L3-L4 and showed an "annular tear resulting in moderate narrowing of the right neural foramen with posterior deviation of the exiting right L3 nerve root." ECF Dkt. #14 at 12, citing Tr. at 663.

Plaintiff is correct that the February 21, 2014 MRI showed multi-level disc degeneration and an "associated annular tear resulting in moderately narrowing of the right neural foramen with posterior deviation of the exiting right L3 nerve root." Tr. at 663. However, the Court notes that the February 21, 2014 MRI that Plaintiff refers to postdates Dr. Wise's July 29, 2011 opinion and thus she did not have these findings before her in making her opinion. Tr. at 414, 663. In fact, there is a September 9, 2010 MRI report in the record which showed a small right-sided protrusion at L5-S1 with no clear evidence of gross compression and mild right foraminal narrowing and a mild disc bulging at L3-L4, with moderate facet hypertrophic change, and very subtle T2 hyperintensity within the margins of the annulus at L4-L5, which typically represents a small annular tear. *Id*. at 401. This MRI was ordered by Dr. Wise. *Id.* The February 21, 2014 lumbar spine MRI report compared that MRI with the February 2010 MRI results. Tr. at 663, 692. The February 21, 2014 lumbar MRI showed mild DDD without significant loss of disc height at L3-4, L4-5, and L5-S1. *Id*. At the L3-L4 level, a bulging disc and facet arthrosis were noted which caused minimal narrowing of the spine canal with a new right neural foraminal disc protrusion with an annular tear resulting in moderate narrowing of the right neural foramen with posterior deviations of the exiting right L3 nerve root. *Id*. The L4-L5 level showed a bulging disc and facet arthrosis narrowing of the spinal canal and neural foraminal. *Id*. The L5-S1 level showed a bulging disc and facet arthrosis with a tiny right paracentral disc protrusion with annular tear resulting in no narrowing of the spinal canal with minimal narrowing of the neural foramina. *Id*. The doctor interpreting the MRI results indicated

his impression as "Mild degenerative changes of the lower lumbar spine with a right neural foraminal disc herniation at the L3-L4 level." *Id.*

The ALJ did cite to the page number of the February 21, 2104 MRI in the paragraph addressing Dr. Wise's opinion. Tr. at 19. Whether or not this was erroneous, the ALJ in any event reviewed the results of both MRIs in her decision, specifically noting the findings of mild DDD at L3-L4, multi-level disc degeneration, and annular tear from the February 21, 2014 MRI in an earlier part of her decision. Tr. at 17-18. Plaintiff fails to explain how the multi-level disc degeneration and annular tear in the February 2014 MRI impact the ALJ's treatment of Dr. Wise's opinion or the RFC that the ALJ provided for her, which included limitations to light work with never climbing ladders, ropes or scaffolds, occasionally climbing stairs and ramps, occasionally kneeling, crawling, balancing, stooping and crouching, avoiding hazards, and she required a cane for ambulation. *Id.* at 15.

The Court rejects the ALJ's third reason for affording less than controlling weight and only little weight to Dr. Wise's opinion. Tr. at 19. The ALJ appears to discount Dr. Wise's opinion because she indicated in a 2011 treatment note that Plaintiff needed a knee replacement when the orthopedic doctor that Dr. Wise referred Plaintiff to indicated that if her pain continued, Plaintiff would need a second arthroscopy. *Id*. Dr. Wise did indicate in a July 29, 2011 treatment note "Knee osteoarthritis - needs TKR" (total knee replacement). *Id*. at 408. Dr. Berkowitz, the orthopedic surgeon to whom Dr. Wise referred Plaintiff, indicated after examination that another arthroscopy would be indicated for Plaintiff if her pain and disability continued. *Id*. at 409. This reason is not a good reason for discounting Dr. Wise's opinion as it was most likely an error in the notes.

Nevertheless, the Court finds that the ALJ's other reasons for affording less than controlling weight and only little weight to Dr. Wise's opinion constitute good reasons and are supported by substantial evidence. The ALJ refers to and discusses the Cleveland Clinic notes in her decision, which do not support Dr. Wise's extreme limitations for Plaintiff. Morever, the ALJ refers to and reviews both the 2011 and 2014 MRI results in her decision, which, without a showing by Plaintiff to the contrary, are also unsupportive of Dr. Wise's extreme limitations and support the ALJ's decision to afford less than controlling weight and only little weight to Dr. Wise's opinion.

### B. RFC

Plaintiff also asserts that the ALJ erred in determining her RFC because the ALJ assigned a RFC without relying upon any medical opinions in the record. ECF Dkt. #14 at 17-19. Plaintiff reasons that because the ALJ attributed little weight to all of the medical opinions in the record, including treating and agency physician opinions, who all found Plaintiff more limited than the ALJ, the ALJ must have substituted her opinion for those of the medical professionals. *Id*.

As explained more fully above, treating physician Dr. Wise opined that Plaintiff was not employable and could stand/walk up to 30 minutes in an 8-hour workday and she could do so for 10 minutes without interruption. Tr at 414. She also opined that Plaintiff could sit 1-2 hours per 8-hour workday and could do so for 30-60 minutes without interruption. *Id.* She further opined that Plaintiff could not lift any weight frequently or occasionally, Plaintiff was extremely limited in bending, markedly limited in handling objects, moderately limited in pushing/pulling, and repetitive foot movements, and not significantly limited or not limited at all in reaching, seeing, hearing or speaking. *Id.* When asked to explain her limitations and the evidence to support them, Dr. Wise wrote that Plaintiff could not bend at her wrist or squat. *Id.* She further wrote "Antalgic gait, cannot walk >50 years & rest, grip inconsistent due to CTS - drops things." *Id*.

Agency physicians Rosenfeld and Freihofner opined that Plaintiff could: lift up to 10 pounds frequently and up to 20 pounds occasionally; sit up to 6 hours per 8-hour workday; stand/walk only up to 2 hours per workday; push/pull on a limited basis as to both upper extremities; limited to frequent hand controls bilaterally due to CTS; limited fingering/fine manipulation as to both extremities; occasionally climb stairs/ramps; never climb ladders, ropes or scaffold, kneel, or crawl due to degenerative joint disease and obesity; occasionally balance, stoop and crouch; and avoid all unprotected heights and heavy machinery. *Id*. at 134-136, 147-149. The ALJ adopted a number of the physicians' limitations, but did not adopt the opinions of Drs. Rosenfeld and Freihofner as to Plaintiff's abilities to stand/walk only 2 hours per 8-hour workday, their limitations for both of Plaintiff's upper extremities for pushing/pulling, including operating hand controls, their limitation to frequent hand controls bilaterally due to Plaintiff's CTS, and their limitations for Plaintiff to never kneel or crawl. Tr. at 15, 134-136, 147-149.

A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. §§ 416.945(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 416.945(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. §§ 416.945(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5. Social Security Ruling ("SSR") 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis. *Id.* Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment and work evaluations. *Id.*

Opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations require that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). More weight is generally attributed to examining medical source opinions than on non-examining medical source opinions. *See* 20 C.F.R. § 416.927(d)(1). The Sixth Circuit has held that the social security regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one examining physician's opinion over another. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006).

Moreover, while an ALJ is not required to discuss each and every piece of evidence in the record to justify his or her determination, *see, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx.

661, 665 (6th Cir. 2004), when the opinion of a medical source contradicts the ALJ's limitations in the claimant's RFC, the ALJ "'must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.'" *Wolfe v. Colvin*, No. 4:15CV1819, 2016 WL 2736179, quoting *Fleischer v. Astrue*, 774 F.Supp.2d 875, 881 (N.D. Ohio 2011). Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

As explained above, the Court finds that the ALJ adequately explained and provided sufficiently good reasons for attributing less than controlling weight and little weight to Dr. Wise's opinion. The ALJ was therefore not required to adopt all of Dr. Wise's limitations. She did adopt Dr. Wise's moderate pushing/pulling and handling limitations by restricting Plaintiff to frequent hand controls with her dominant right hand and frequent fingering in her dominant right hand. Tr. at 15, 414. The ALJ also partially adopted Dr. Wise's limitations as to Plaintiff's antalgic gait by indicating in her RFC that Plaintiff required a cane for ambulation. *Id*.

As to the opinions of the agency consulting physicians Drs. Rosenfeld and Freihofner, the ALJ was not required to provide good reasons for rejecting those opinions. *Kornecky*, 167 Fed.Appx. at 508. However, SSR 96-8p provides that, when determining the RFC assessment, an ALJ "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184 at *7. The ALJ specifically addressed the agency physicians' opinions in this case and explained why she did not adopt their opinions in full. She adopted Drs. Rosenfeld and Freihofner's limitations regarding Plaintiff's abilities to lift up to 10 pounds frequently and up to 20 pounds occasionally, and their opinions that Plaintiff could sit up to 6 hours per 8-hour workday, and their limitations of Plaintiff to occasional climbing of stairs/ramps, never climbing ladders, ropes or scaffolds, and occasionally balancing, stooping and crouching, as well as the avoidance of all unprotected heights and heavy machinery. *Id*. at 134-136, 147-149.

However, the ALJ did not adopt the opinions of Drs. Rosenfeld and Freihofner concerning Plaintiff's abilities to stand/walk only 2 hours per 8-hour workday, their limitations for both of Plaintiff's upper extremities for pushing/pulling, including operating hand controls, their limitation to frequent hand controls bilaterally due to Plaintiff's CTS, and their limitations for Plaintiff to never kneeling or crawling. Tr. at 15, 134-136, 147-149. In deciding to attribute little weight to this part of the agency physicians' opinions, the ALJ cited to the medical evidence and her discounting of Plaintiff's credibility in support of her decision. Substantial evidence supports the ALJ's determinations.

The ALJ sufficiency explained that she did not adopt the fingering limitations of Drs. Rosenfeld and Freihofner for both of Plaintiff's hands because they had based these limitations on CTS, which was only found present in Plaintiff's right upper extremity. Tr. at 19. The ALJ cited to Dr. Berkowitz's carpal tunnel release performed in 2007 only on Plaintiff's right hand and she cited to Dr. Wise's treatment notes indicating that Plaintiff was status post CTS in the right upper extremity only. *Id.* at 17, citing Tr. at 406. The ALJ did limit Plaintiff's abilities in her right hand based upon the 2007 surgery. *Id.* at 15. Substantial evidence supports the ALJ's decision to attribute only little weight to the left upper extremity limitations opined by Drs. Rosenfeld and Freihofner.

As to the standing/walking limitation to 2 hours, the ALJ found that Plaintiff could perform the 6-hour standing/walking requirement for light work. Tr. at 16-19. In rejecting the 2-hour standing/walking limitation of Drs. Rosenfeld and Freihofner, the ALJ merely stated that the doctors limited Plaintiff to 2 hours "when the claimant only has a torn meniscus." *Id.* at 19. This statement does not suffice to afford little weight to this portion of the agency doctors' opinions or the ALJ's standing/walking limitation for Plaintiff.

However, in the same part of her RFC finding, the ALJ relied in part on medical evidence and on the discounting of Plaintiff's credibility, both of which provide substantial evidence to support her findings concerning the standing/walking limitation that the ALJ assigned to Plaintiff and her decision to attribute little weight to the extreme limitation offered by the agency doctors..

-13-

The ALJ cited to a March 26, 2014 physical therapy evaluation in which the notes indicate that Plaintiff had "major" and "moderate" limitations in lumbar range of motion and very limited knee range of motion, with back pain limiting her left knee range of motion, and knee pain limiting her right knee range of motion. Tr. at 19, citing Tr. at 677. The ALJ noted that despite these medical findings, Plaintiff did not present as so limited in the examinations at her pain management clinic in the same month and year and one month prior to the March 2014 physical therapy evaluation. *Id*. at 19. The ALJ cited to pain management treatment notes dated February 10, 2014 in which Plaintiff's straight leg raising was negative, her bilateral upper and lower extremities were normal and asymmetric, and there were no signs of atrophy or tone abnormalities, although she had decreased range of motion to extension in her back and right knee crepitus. *Id*. at 19, citing Tr. at 659. The ALJ also cited to a March 17, 2014 pain clinic treatment note where Plaintiff reported low back and knee pain, but she indicated that lidocaine ointment, a TENS unit and Percocet were helping. *Id*. at 19, citing Tr. at 666. The ALJ also noted that upon physical examination on March 17, 2014, Plaintiff had normal range of motion without pain reproduction, full and pain-free range of motion in her extremities, and no atrophy or tone abnormalities. *Id.* at 19, citing Tr. at 669.

The ALJ also cited to Plaintiff's testimony and reports to her doctors, which tended to discount her credibility as to disabling pain and severe limitations. The ALJ noted that Plaintiff reported at her physical therapy evaluation that "people" made her lower back pain worse. Tr. at 19, citing Tr. at 676. She also cited to Plaintiff's response to a nurse who was interviewing her in order to obtain a TENS unit. Tr. at 18, citing Tr. at 661. The nurse noted that "[d]uring the interview patient continues to text on her phone, hesitant to answer questions. States 'I have been to pain management clinic before, I know how this works.'" *Id*. The nurse further noted that Plaintiff did not answer when she was asked what she did for work, if she was not working, when the last time she worked was, and whether she was receiving disability benefits. *Id*. at 662. The ALJ found this behavior to be inconsistent with complaints of disabling pain. *Id*. at 18. The ALJ also pointed out that Plaintiff's onset date of disability was based upon when she was laid off from her job, rather than on a beginning date of a medical condition or the exacerbation of a medical condition. *Id*. at 16. The ALJ further noted that Plaintiff had always worked only on a part-time

-14-

basis *Id.* These findings, that Plaintiff lacked interest in answering questions concerning a device that helps her pain, Plaintiff's onset date was based upon an end of work date rather than a date corresponding to her medical conditions, and Plaintiff having never before worked on a full-time basis, support the ALJ's decision to discount Plaintiff's credibility of disabling pain and limitations.

For these reasons, the Court finds that substantial evidence supports the ALJ's decision to attributed little weight to portions of the opinions of the agency doctors and supports the ALJ's RFC for Plaintiff.

## VI. CONCLUSION

For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: August 24, 2018            */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE